SOUTHERN UNION GAS COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent, Pacific Gas and Electric Company, Intervenor.

No. 75–1600.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 20, 1976.

Decided June 18, 1976.

Robert J. Haggerty, Washington, D. C., with whom Arthur S. Grenier, Dallas, Tex., and John T. Ketcham, Washington, D. C., were on the brief for petitioner.

Thomas M. Walsh, Atty., Federal Power Commission, Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel and Allan Abbot Tuttle, Sol., Federal Power Commission, Washington, D. C., were on the brief for respondent.

Howard V. Golub, San Francisco, Cal., with whom Malcolm H. Furbush and Daniel E. Gibson, San Francisco, Cal., were on the brief for intervenor.

Before LEVENTHAL and MacKINNON, Circuit Judges, and KAUFMAN,* United States District Judge for the District of Maryland.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

This is a petition to review the orders of the Federal Power Commission (FPC), which issued on March 20, 1975 and May 16, 1975, concerning El Paso Natural Gas Co.'s application for certificates of authority for construction and operation of a facility "looping" a segment of its Alamogordo, New Mexico lateral, which served only customers of petitioner Southern Union Gas Co. The March 20 order granted rehearing at the behest of intervenor Pacific Gas & Electric Co. (PG&E), ordering El Paso to remove the cost of constructing the loop from its rate base because of the operation

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

of the lateral line policy formula of El Paso's tariff. The effect of this order was to expose Southern Union to a charge for the construction cost of the loop, reversing the initial order in this proceeding, decided on January 16, 1975, which had rejected imposition of a special facilities charge on Southern Union. The May 16 order denied Southern Union's application for rehearing, in which it argued that (1) El Paso's lateral line policy should not have been considered because it had not been raised by PG&E as an exception to the initial decision of the Administrative Law Judge (ALJ); (2) the lateral line policy may not apply to this case; (3) Southern Union should have an opportunity to seek a waiver of the policy, largely on safety grounds; and (4) proper application of the policy would result in a zero contribution by Southern Union.

█ This case is remanded to the FPC for further proceedings. The court is uncertain of the basis for the Commission's May 16 order. The Commission's ruling appears to rest on a ground directly counter to that developed during the proceedings before the ALJ. In its initial decision of January 16, the Commission adopted the view of the ALJ and El Paso, that the cost of constructing the looping lateral was not properly handled as a special facilities charge to be imposed on Southern Union, which, in effect, reflected a judgment that the pipeline extension was of benefit to the integrated system as a whole.[1] However, the Commission's subsequent decision as to the applicability of the lateral line policy of the El Paso tariff reflects a determination that there would be no benefit to the El Paso system in the form of any increment in system-wide net sales in a future period as early as three years after construction.

In addition to pointing out this unexplained inconsistency in the Commission's approach during the course of this proceeding, Southern Union argues that the Commission has misapplied the lateral line policy by ignoring the impact of "grouping of delivery points," which would enable Southern Union to show a net increase in third-year sales at the lateral without contravening the annual volumetric limitations of the El Paso curtailment plan. See J.A. at 114. That raises a question not specifically addressed in the FPC's terse opinion denying rehearing, whether enlargement in sales at the lateral warrants a certificate of convenience, and satisfies the lateral line policy through third year net increase in sales at the lateral, even though there is no system-wide benefit; or whether in such circumstances the lack of system-wide benefit fairly results in a conclusion avoiding increase in rate base, a ruling based either on the tariff's lateral line policy or a forthright special facilities charge.

We think that orderly development of the record requires a remand. In effect, this proceeding has been reconstructed as an application for a certificate of public convenience and necessity that is accompanied by a proposal (initiated by PG&E, accepted by the FPC, and not protested by El Paso) that conditions certification on application of the lateral line policy. Without questioning the granting of PG&E's application for rehearing, this action does accomplish the kind of change in direction that warrants further opportunity for presentation by Southern Union. On the remand, the FPC should provide an integrated consideration of the circumstances leading to construction of the pipeline extension and the matter of who should pay for its construction. Southern

---

1. PG&E in its exceptions to the ALJ decision contended that in the context of supply-induced curtailment there could be no expectation that a pipeline extension would "benefit all customers of the pipeline through improved load factors on the entire system and perhaps through lower unit costs," and that a special facilities charge would be consistent with the Commission's curtailment rules. J.A. 75–76, 78. The Commission disagreed, arguing that (1) imposition of a special facilities charge would require a more focused inquiry; (2) the looping pipeline facility is necessary to protect Southern Union's highest priority customers from gas shortage; and (3) in light of El Paso's "integrated system for the production, gathering, transmission, and sale of natural gas" a special facilities charge would require greater documentation of the absence of system-wide benefit than supplied in PG&E's exceptions. J.A. 95.

Union could offer its objections, and it could be determined whether these involve the presentation of evidence requiring an evidentiary hearing, or whether they involve legal issues of construction of El Paso's lateral line policy and curtailment plan.[2] A proceeding may be appropriate even where there is no evidentiary dispute, strictly speaking, if that matter requires orderly discussion and presentation of a number of interrelated policy and legal issues requiring careful ventilation, with the possibility that witnesses as well as counsel may provide factual perspective even in the absence of specific factual controversy.[3]

 The court also requests the Commission on remand to address itself to the question of whether Southern Union is "aggrieved" by the orders in question. If Southern Union is not "aggrieved," this court does not have jurisdiction of its petition to review, and we are entitled to the views of the Commission on that matter.[4] Moreover in order for the court to consider the contention that there has been basic unfairness in the proceeding, the court would properly consider not only a report by the agency on the equities of the situation[5] but also any conditions that might be equitably imposed as a condition of granting the certificate to El Paso.[6]

The case is remanded to the FPC for proceedings not inconsistent with this opinion.

*So ordered.*

2. In the proceedings on remand, Southern Union should be permitted to present its contention that a waiver from the lateral line policy is appropriate in this case because compelling safety considerations justified construction of the loop. Southern Union raised this point in its brief opposing PG&E's exceptions (J.A. 90) and in its application for rehearing (J.A. 112–13). The Commission in denying Southern Union's application stated that "the record clearly demonstrates that no waiver was granted and that there is no basis for granting a waiver," and that Southern Union essentially waived this point by failing to develop a record on safety considerations justifying waiver (J.A. 120). We feel that the Commission was too quick to find waiver, in light of the fact that until it granted PG&E's application for rehearing the proceedings had not focused on the applicability of the lateral line policy, and Southern Union would be naturally reluctant to raise this question, which might be taken to involve criticism of the transmission company, when the dispute between the parties turned on other grounds. At this juncture, we are not ordering the Commission to hold an evidentiary hearing on the safety issue, but if the Commission deems the record adequate to foreclose this point it should give reasons supporting such a conclusion in order to permit the court to exercise its review function.

3. Such an issue may be handled by on-the-record conference. *See Citizens of Allegan County, Inc. v. FPC,* 134 U.S.App.D.C. 229, 238, 414 F.2d 1125, 1134 (1969).

4. In denying Southern Union's petition for rehearing, the Commission noted that its order did not decide the issue of whether Southern Union was required to reimburse El Paso for the construction cost; that matter was for another forum. ˙J.A. 120. The order in terms does not reach this issue, and leaves a tariff controversy between El Paso and Southern Union overhanging—with doubt in our mind as to the practical consequences.

5. *Cf. Atlantic Coast Line R. Co. v. Florida,* 295 U.S. 301, 312, 55 S.Ct. 713, 79 L.Ed. 1451 (1935).

6. The Commission has authority to condition its issuance of a certificate of convenience and necessity, *see Atlantic Refining Co. v. Public Serv. Comm'n of New York ("CATCO case"),* 360 U.S. 378, 391–92, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959), and has some discretion to impose conditions rooted in equity, *see Niagara Mohawk Power Corp. v. FPC,* 126 U.S.App.D.C. 376, 381–83, 379 F.2d 153, 158–60 (1967).

In its initial decision of January 16, 1975, the Commission affirmed the finding of the ALJ that El Paso had violated the Natural Gas Act and FPC regulations thereunder in beginning construction of the looping lateral without prior Commission approval. J.A. 94. This finding, coupled with the possibility that Southern Union might not have sought construction of the pipeline extension had it known that it would shoulder sole responsibility for the costs of construction, may present an occasion for conditioning permanent certification on an equitable allocation of those costs as between El Paso's shareholders and Southern Union's customers and shareholders.